# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VARDAN GRIGORIAN,** : | No. 3:10cv1540 |
|       **Petitioner** : | |
| : | (Judge Munley) |
| **v.** : | |
| : | |
| **JOHN MORTON, Assistant Secretary,** : | |
| **Immigration and Customs** : | |
| **Enforcement;** : | |
| **ERIC HOLDER, United States** : | |
| **Attorney General;** : | |
| **JANET NAPOLITANO, Secretary,** : | |
| **Department of Homeland Security;** : | |
| **CRAIG A. LOWE, Warden, Pike** : | |
| **County Correctional Facility,** : | |
|       **Respondents** : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is the instant petition for a writ of habeas corpus. The government has responded to the petition with a motion to dismiss and the parties have briefed the issue, leaving the matter ripe for disposition.

**Discussion**

Petitioner Vardan Grigorian entered the United States on or about December 12, 1996 (Petition (Doc. 1) at 5). On July 7, 2003, Grigorian was placed in removal proceedings via a notice to appear. (Id.). Petitioner filed an application for asylum on September 24, 2003, contending that his removal should be withheld pursuant to the United Nation's Convention Against Torture. (Id.). An Immigration Judge denied

this application on April 14, 2004.  (Id.).  Petitioner appealed this decision to the Board of Immigration Appeals (BIA) on April 29, 2004.  (Id.).  The BIA dismissed this appeal on June 28, 2005.

The heart of petitioner's claim is based on the events that followed this BIA decision.  He contends he received a letter from his then-attorney, Mr. Nalbandian, informing him that the BIA had denied his appeal and relating that he must file an appeal in the Ninth Circuit Court of Appeals within thirty days.  (Id. at 5-6).  Doubting Nalbandian's credibility, petitioner sought a second opinion.  (Id. a 6).  Yefim M. Shlionsky, who, despite only recently completing law school, assured petitioner that he was competent to assist him, advised Grigorian that he should file a motion for reconsideration with the BIA rather than appealing.  (Id.).  Shlionsky did not inform petitioner that failing to file the appeal would foreclose him from later appealing to the Circuit Court.  (Id.).  Petitioner had Shlionsky file the motion for reconsideration, and he alleges that he thereby lost his ability to appeal the case beyond the BIA. (Id.).  Grigorian thus claims that Shlionsky's advice cost him the ability to appeal his case.  (Id.).  He relates that he has petitioned the BIA to reopen his case, alleging that Shlionsky's conduct constituted ineffective assistance of counsel.  (Id.). Petitioner's motion to reopen and request for a stay with the BIA are currently pending.

At the same time, the Armenian Consulate has informed petitioner that the Bureau of Immigration and Customs Enforcement (ICE) has requested Armenia to

2

re-issue a travel document. (Id. at 6-7). Petitioner predicted that this travel document will be issued for his deportation on July 16, 2010. (Id. at 7).

Grigorian filed the instant petition on July 13, 2010 in the United States District Court for the Eastern District of Pennsylvania, along with motions for an emergency hearing and for an order to show cause. (Docs. 2-3). The Hon. Judge Thomas N. O'Neill, Jr. was assigned to the case, and he scheduled a hearing for July 27, 2010. (Doc. 4). The parties then filed briefs stating their respective positions, with the government additionally filing a motion to dismiss. The defendants argued in part that the case should be dismissed due to lack of subject matter jurisdiction or in the alternative transferred to the Middle District of Pennsylvania, where petitioner was held pending deportation. (See Docs. 5-6). Before conducting the hearing, however, the court issued a memorandum and order that declined to rule on the issue of jurisdiction and instead transferred the case to this court. (See Doc. 8). The case was then assigned to the instant judge, bringing the matter to its present posture.

**Jurisdiction**

Petitioner brings this action pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 2241. As such, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

The government argues that the court lacks subject-matter jurisdiction and should not hear the case. Federal courts are courts of limited jurisdiction, and thus have a continuing duty to satisfy themselves of jurisdiction before addressing the merits of a case. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1049 (3d Cir. 1993) cert denied sub nom Upp v. Mellon Bank N.A., 510 U.S. 964 (1993). In fact, it is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Moreover, federal courts have the obligation to address the question of subject matter jurisdiction *sua sponte*. Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999); see generally Nelson v. Keefer, 451 F.2d 289, 293-95 (3d Cir. 1971) (finding that the federal judiciary has been too cautious in addressing the large number of cases which do not belong in federal courts).

**Discussion**

The question here is whether petitioner seeks review of a final order of removal. Under the Real ID Act of 2005, "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision" of the Immigration and Nationality Act. 8 U.S.C. § 1252(a)(5). That limitation applies to review sought through means of a habeas corpus petition. Id. "Arguably, any challenge by an alien who seeks to remain in this country could be

4

construed as challenging his or her "'removal, deportation, or exclusion,' but such a broad interpretation would be counter to Congress' express intent. Instead, only challenges that directly implicate the order of removal . . . are properly the subject of transfer [to the Court of Appeals] under the REAL ID Act." Nnadika v. Attorney General of the United States, 484 F.3d 626, 632 (3d Cir. 2007). Here, petitioner claims he is not seeking review of the order of removal, but instead simply seeks to stay the implementation of that order until the BIA rules on his attempt to reopen the case. Thus, he argues, the restrictions in the REAL ID Act do not apply to this case.

Petitioner first contends that the court has the power to stay the case pending a decision of the BIA. "An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as 'inherent,' preserved in the grant of authority to federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" Nken v. Holder, 129 S. Ct. 1749, 1756 (2009) (quoting 28 U.S.C. § 1651(a)). This power "was 'firmly imbedded in our judicial system,' 'consonant with the historic procedures of federal appellate courts,' and 'a power as old as the judicial system of the nation." Id. at 1757 (quoting Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9-10, 13 (1942)). The reviewing court has discretion to issue a stay, and is guided by "four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

5

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Id. at 1761 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

At this point, there is no final order that the petitioner could seek to have the court review. Petitioner awaits a decision from the BIA, and review may not be necessary in any case. Moreover, this court does not have authority to review a final order of removal, or an order, as the one in this case, that refuses to reopen an appeal. Such review is limited by law to the Court of Appeals. See Kolkevich v. Attorney General of the United States, 501 F.3d 323, 326 (3d Cir. 2007) (holding that the Real ID Act "eliminated availability of habeas corpus relief in the district courts for aliens seeking to challenge orders of removal. Instead, Congress substituted petitions for review, filed with the courts of appeals within the first 30 days after issuance of an order of removal, as the sole vehicle whereby aliens could challenge their removal."). Courts have found that reviews of a refusal to reopen a deportation proceeding can be brought only in the appropriate court of appeals.[1] See Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004) (finding that the court had jurisdiction to

---

[1] The Court rejects petitioner's argument that he should be allowed to seek relief in this court because he claims ineffective assistance of counsel, and thus he is not seeking a review of the final order of removal. The review of his ineffectiveness claim would necessarily implicate the final order of removal, and is thus outside this court's jurisdiction. Indeed, the case cited by the defendant for the proposition that ineffective assistance of counsel is grounds for reversing an order of removal, Fadiga v. Attorney General of the United States, 488 F.3d 142 (3d Cir. 2007), demonstrates that the proper forum for petitioner's action if the BIA's decision were final would be the Court of Appeals. The Court reviewed an order of the BIA, and the district court was never involved. See Id. at 153.

6

review an order refusing to reopen a deportation case pursuant to 8 U.S.C. § 1252); Ming Shan Wang v. Attorney General of the United States, 178 Fed. Appx 103, 105 (3d Cir. 2006) (holding that "[w]e have exclusive jurisdiction to review the BIA's affirmance of a denial of a motion to reopen removal proceedings.").

The petitioner thus asks the court to stay a case over which it does not have presently have jurisdiction, could never have jurisdiction and would not have authority to review. See, e.g., Amaya v. United States Immigration and Customs Enforcement, No. 09-20749, 2010 U.S. App. LEXIS 14095, *2 (5th Cir. June 22, 2010) (denying a motion to stay deportation because though the court had "authority to stay a removal order pending consideration of a petition for review of a removal order . . . [petitioner] has not filed a petition for review with this court."). The purpose of a stay–to allow the court to consider whether to reverse the BIA's impending order and prevent deportation–does not apply when the court lacks the power to make that decision. The court will therefore deny the petitioner's request for a stay.[2]

In situations of this sort, the court would normally transfer the case to the appropriate appellate court. As a general matter, "[w]henever a civil action is filed in a court . . . or an appeal, including a petition for review of an administrative action, is noticed for or filed with such a court and that court finds that there is a want of

---

[2]In any case, petitioner represents that he has asked the Board of Immigration Appeals to reopen his case and "sought the stay of removal from the BIA," which would appear to be the body most appropriate to address the issue at this point. Motion for Emergency Hearing on Petition for Writ of Habeas Corpus (Doc. 2) at 2.

jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. Here, petitioner alleges that the Board of Immigration Appeals has not rendered a decision on his motion to reopen. The Court of Appeals would therefore have no final order or opinion to examine on appeal, and thus no jurisdiction to hear the matter. Id. This court therefore finds that the interests of justice would not be served by transferring the case to the Ninth Circuit Court of Appeals before the BIA has issued a decision. See, e.g., Atem v. Ashcroft, 312 F. Supp. 2d 792, 798 (E.D. Va. 2004) (refusing to transfer case to Circuit Court because "the immigration judge had yet to issue an order of removal"); Alcantara v. Attorney General of the United States, No. 08-3978, 2009 U.S. App. LEXIS 11952, *2 (3d Cir. January 26, 2009) (remanding to the district court to address whether that court could review a citizenship claim and stay an order of removal because there was no final order of removal and the circuit court lacked jurisdiction).

Petitioner also seeks a court hearing for a determination of whether he should be released pending the decision on his motion to reopen his deportation case. He argues that he was employed and supporting his wife, a United States citizen, and their family. As such, petitioner contends, he should be granted an individualized determination of whether he presents a risk of danger to the community or flight. Under federal law, he claims, the district court has jurisdiction to consider the

8

propriety of detention pending removal when the petitioner does not seek review of the order of removal itself.

At question here is whether petitioner may be detained pending removal. "While removal proceedings are in progress, most aliens may be released on bond or paroled." Zadvydas v. Davis, 533 U.S. 678, 683 (2001). Once there is "entry of a final removal order and during the 90-day removal period [established by law], however, aliens must be held in custody." Id. Such custody can sometimes exceed ninety days, and when the detention extends beyond the statutorily prescribed period, constitutional problems can arise. Id. at 689. The Constitution limits detention under the statute "to a period reasonably necessary to bring about [the] alien's removal from the United States. It does not permit indefinite detention." Id. Thus, detention pending removal is designed to allow for that removal, and "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." Id. at 699. An alien generally cannot be held for more than six months pending removal. Id. at 701. Once that period passes without a likelihood of removal, the alien is usually eligible for conditional release. Id.

Detention, release and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231. Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal during which time detention is mandatory. Section 1231(a)(1)(B) provides the following:

> The removal period begins to run on the latest of the following:
> (i) The date the order of removal becomes administratively final,

9

>           (ii) If the removal order is judicially reviewed and if the court orders a
>           stay of the removal of the alien, the date of the court's final order.
>           (iii) If the alien is detained or confined (except under an immigration
>           process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231. At the conclusion of the ninety-day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§ 1231(a)(3) & (6). The statute "limits an alien's post-removal-period detention to a period necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." Id. Id. at 701.

Following Zadvydas, regulations were promulgated to meet the criteria established by the Supreme Court. See 8 C.F.R. § 2414. Prior to the expiration of the mandatory ninety-day removal period, the district director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the Headquarters Posts Order Detention Unit ("HQPDU") for further custody review. 8 C.F.R. § 241.4(k)(1)(ii). Once jurisdiction is transferred, an eligible alien may submit a written request for release to the HQPDU. 8 C.F.R. § 241.13(d)(1). Pursuant to 8 C.F.R. §

10

241.13, special review procedures are established for "those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the county to which he or she was ordered removed, or to a third county, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Significantly, an alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

Petitioner contends that he should be considered for release by the Department of Homeland Security pending decision on his motion to reopen the case. Petitioner admits that he is subject to a final order of removal and thus removable under statutory rules. He argues that he meets the criteria for release established by agency regulations, that he is not a danger or a flight risk, and that he should be available to support his U.S. citizen-wife and her children. Petitioner lays out the factors that the agency should consider in his application for release, but does not represent that he has laid this case before the agency by making a written request for release. Instead, he asks this court to weigh those factors.

The court finds that the appropriate remedy in this case is to dismiss the petition for a writ of habeas corpus and refer the case to the Bureau of Immigration and Customs Enforcement (ICE) to examine the propriety of petitioner's continued

custody. ICE should treat the petition as a request for a release from detention and evaluate that request under the appropriate federal regulations.

**Conclusion**

For the reasons stated above, the court will deny the petition for a writ of habeas corpus for want of jurisdiction. The court will order that ICE treat the parts of the petition aimed at gaining release for the petitioner pending a decision on his motion to reopen as a request for release. ICE shall respond to that request within thirty days.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VARDAN GRIGORIAN, <br>     Petitioner <br><br> v. <br><br> JOHN MORTON, Assistant Secretary, <br> Immigration and Customs <br> Enforcement; <br> ERIC HOLDER, United States <br> Attorney General; <br> JANET NAPOLITANO, Secretary, <br> Department of Homeland Security; <br> CRAIG A. LOWE, Warden, Pike <br> County Correctional Facility, <br>     Respondents | No. 3:10cv1540 <br><br> (Judge Munley) |

## ORDER

**AND NOW**, to wit, this 7th day of September 2010:

1. The instant petition for a writ of habeas corpus is hereby **DISMISSED**;

2. As of the date of this order, ICE shall treat the petition for writ of habeas corpus as a request for release under 8 C.F.R. § 241.4 and 241.13.  ICE shall provide petitioner with a response to his request within thirty days; and

3. The Clerk of Court is directed to **CLOSE** the case.

13

BY THE COURT:


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**